GRAND ISLE,
January,
1843.

MATHEW BURNS *v.* WILLIAM BROWN and ABEL BROWN.

Burns
*v.*
Brown &
Brown.

Where a feme sole is seized, in fee, of several parcels of land, and marries, and then joins with her husband in a mortgage of a part of them, to secure his debt, if the husband and wife afterwards sell the whole, subject to the mortgage, which the grantees assume to pay, and the balance of the purchase money be secured to a trustee for the separate use of the wife—such balance not exceeding her reversionary interest in the lands—the grantees will not be subjected to a *quitam* prosecution, for a penalty under the statute to prevent fraudulent conveyances, though it was the intention of the parties to the conveyance, to secure to the wife such balance from the proceeds of the sale.

THIS was a *quitam* action, to recover a penalty, for the fraudulent conveyance of real estate, in which the plaintiff declared, that, on the 12th day of March, 1841, one Jonathan Goodwin being indebted to the plaintiff, in the sum of $475.05, and being seized, in right of his wife, Caroline Goodwin, of three parcels of land, of the value of $2.500, did, in conjunction with his wife, and with intent to defraud the plaintiff of his said debt, convey said parcels of land to the defendants, who accepted said conveyance with the knowledge of such intent, and with the purpose of aiding in its execution.

Plea, not guilty, and issue to the country.

On trial, in the county court, evidence was given tending to prove that the wife of Goodwin was the owner, in fee, of two of the parcels of land, described in the plaintiff's declaration, and that she had an estate in the other of said parcels during the life of her mother; that, in 1837, Goodwin and his wife executed to the plaintiff, a mortgage of one of said parcels of land, containing about sixty-four acres, to secure the payment to him, of a debt, which, at the time of the conveyance to the defendants, amounted to about $1,300; that at the time of said conveyance to the defendants, Goodwin was indebted to the plaintiff, in the sum stated in his declaration, which was not secured by the said mortgage; that the whole interest of Goodwin and wife in the several parcels of land conveyed to the defendants, was worth, at the time of said conveyance, about $2.000, which was the sum which the defendants agreed to pay therefor; that, in payment thereof, the defendants assumed to pay the said $1300, the amount of the incumbrance on one of said parcels, and for

the remaining $700, gave their note to one Lewis Mott, payable in seven years with interest, in trust, for the benefit of the said Caroline and her children, who were admitted to be the children of the said Goodwin ; that, at the same time, the defendants executed a writing, promising that, if the excess above the mortgage should be found to be more than $700, they would pay the difference ; that at the time of said conveyance to the defendants, and the execution by them of the note of $700, they designed to secure to the separate use of the wife and children of Goodwin the excess of the purchase money above the mortgage debt, due the plaintiff, and to prevent the plaintiff from collecting his debts by means of the property, further than they were secured by the mortgage ; and that the note was given in trust, for this purpose, and with this intent.

The court, among other things, charged the jury, that chancery would protect the wife of Goodwin in her share of the consideration which was paid for the lands conveyed by her and her husband, to the defendants—which would be equal to her reversionary interest in the same, after the determination of her husband's interest ; that the creditors of Goodwin never had any right in, or control over, this reversionary interest; and that, if they should find, from the evidence, that the said mortgage incumbrance, which was to be paid by the defendants as a part of the consideration of their purchase, was equal to, or greater than, the whole interest which the husband had acquired in the lands in question, by his marriage with his wife, then it would be their duty to return a verdict for the defendants.

The jury returned a verdict for the defendants, and the plaintiff excepted.

*Smalley & Adams*, for plaintiff.

I. The court charged the jury, that chancery would protect the wife of Goodwin, in her share of the consideration which was paid for the land—a proposition, the truth of which, it is not deemed necessary to discuss. It was, however, calculated to mislead the jury, inasmuch as it seems to entirely misapprehend the gravaman of the action. The suit was not brought on the assumption that the defendants, by taking a conveyance of the reversionary interest of Good-

GRAND ISLE,
January,
1843.

Burns
v
Brown &
Brown.
win's wife, had defrauded the plaintiff; but for their having, with intent to defeat and avoid the plaintiff's right and debt, become parties to a deed from Goodwin, of his life estate to the lands in question.

II. The court further charged the jury, that if they found the incumbrance placed on the 64 acre tract of land, by the husband and wife equal to, or greater than, the whole estate which Goodwin had acquired by marriage, in the several tracts conveyed to defendants, then they should return a verdict for the defendants. This branch of the charge is erroneous in several particulars.

1. If, by it, we are to understand—which seems to be its plain import—that the jury were instructed, that if the value of Goodwin's interest in the several tracts of land conveyed to the defendants, did not exceed the incumbrance on the 64 acre piece, then he had no interest whatever in the lands, it is clearly wrong. For had the mortgagee foreclosed his mortgage, and taken possession of the 64 acre tract, it cannot be pretended, that this would have extinguished Goodwin's right or interest in the other tracts. After the foreclosure of the mortgage, or before, any creditor of Goodwin would have a right to attach and levy upon his life-estate in the sixteen acre piece, and the twenty acre piece, unless some mysterious influence and power were conferred on this particular mortgage.

2. If, from the whole charge, we are to understand that the jury were instructed that, if Goodwin had, prior to the alleged fraudulent conveyance, expended and squandered property of his wife that he had acquired by his intermarriage with her, and by her consent, equal in value to the whole interest which he had left in the remainder of the estate of the wife, then he had no interest in that estate to which his creditors had any right, the charge is erroneous, whether tried by the rules of law or equity. For, 1. The husband, after issue—which is the fact in this case—acquires a life estate in the real estate of his wife, as tenant by the curtesy initiate. His creditors have a right to attach and take his estate thus acquired; and no authority can be found that will sustain the doctrine that, at law, the husband can make a voluntary settlement of his property to the use of his wife, in order to defeat his creditors, though he may

have used, and wasted, ever so much of his wife's estate, and the very property which he settles to her use may be the property which he acquired in her right. 2. In equity it seems to be a well settled principle that the legal estate of the husband in the wife's property, when reduced to possession, cannot be protected from the creditors of the husband. Preston on Legacies, 226.

In the state of New-York, where the court of chancery has been liberal in lending its aid to protect the wife's property, this conveyance to the defendants would be decreed void. *Van Duzer* v. *Van Duzer*, 6 Paige, 366 ; *Wikes* v. *Clark*, 8 Paige, 161 ; 19 Conn. R. 137.

*Stevens & Seymour* for defendants.

In this case, the defendants insist that the charge of the court was correct in instructing the jury, that, if they found that the plaintiff had received of Goodwin, by means of the mortgage excuted by Goodwin and wife, the full amount of Goodwin's interest in the lands deeded, the defendants could not be liable in this action.

In the first place, we contend that the wife, by uniting with her husband in securing, by mortgage, the debt due the plaintiff, was entitled to have his interest in her real estate, as tenant by the curtesy, first applied to the payment of the debts in exoneration of her estate. *Neimcuzwitz* v. *Gahn et al.*, 3 Paige, 614.

A court of equity would, upon the application of these defendants, have protected the wife's interest to as great a degree, if not further, than has now been done. *Dun* v. *Bowyer*, McCord's Ch. R. 368, 372 ; Am. Ch. Dig. vol. 1, 526.

If, then, the defendants have only done that which a court of equity would have ordered them to do, can they be liable in a penal action ?

The opinion of the court was delivered by

BENNETT, J.—The court can discover no reasons for disturbing the verdict of the jury. They were told, that if they found, that the mortgage incumbrance which had been placed by Goodwin and his wife upon a portion of her lands, for the benefit of Goodwin, and to secure his debt,

GRAND ILSE, and which was to be paid out of the consideration paid for
January, these lands, was equal to, or greater than, the whole
1843.
interest which the husband had acquired therein, by the
Burns
v.          means of his intermarriage with his wife, then it would be
Brown &     their duty to return a verdict for the defendants. The charge
Brown.      proceeds upon the ground that the wife, upon the sale of her
lands, is equitably entitled to such a portion of the consid-
eration, as would equal her reversionary interest. In the
case of *Neimcuzwitz* v. *Gahn et al.*, 3 Paige, 614, it is held,
if the wife unites with the husband in a mortgage of her
real estate, merely as a security for the payment of his debt,
she is entitled to have his interest in the estate, as tenant by
the curtesy, first sold and applied to the payment of the
debt, in exoneration of her estate in the mortgaged premises.

This equity of the wife was considered a claim paramount
to that of a judgment creditor, who had but a general lien
upon the husband's interest in the premises, subsequent to
the mortgage. The wife having pledged her own estate for
the husband's debt, was considered as a surety for the
husband, and entitled to the same equitable rights as other
sureties. Clancy,—Husband and Wife, 589,—sums up
the rule as derived from the English cases, thus: "where
the transaction is a mortgage by husband and wife, of her
real estate, with a view to pay his debts, or to promote his
interest, she will be considered, in equity, as a creditor for
the money, and as entitled to have his personal assets ap-
plied in discharge of the amount; the court, looking upon
him as the debtor, and on her land only as an additional
security." In equity the wife must be considered as a dis-
tinct person from the husband; and, in a proper case may,
by subrogation, be placed in the shoes of the mortgagee.
*Patrick* v. *Pawlet*, 2 Atk. 383; *Aguilar* v. *Aguilar*, 5
Mod. R. 414.

By the charge of the court the wife was not to be protect-
ed beyond her reversionary interest in her lands, leaving the
husband's interest, *jure uxoris*, subject to the claims of his
creditors. It is true, the mortgage did not incumber but a
part of the wife's lands, but we do not see that this should
make a difference. Though the husband had acquired a life
estate in all the real estate of the wife, as tenant by the cur-
tesy initiate, and though chancery could not withdraw such

legal estate from the husband, for the purpose of making a separate provision for the wife and children, upon the ground that it was once her separate property, and he was likely to squander it; yet, as the wife's lands, that is, her reversionary interest, as well as her husband's life estate, were pledged for the husband's debt, she would stand in the nature of a surety for the husband, for so much as would be equal to the excess of the incumbrance above the value of the life estate of the husband in so much of the lands as were included in the mortgage. Standing as a creditor to the husband, for this excess, most clearly, then, it was right that the wife should be reimbursed such excess, upon the sale of her entire lands, though the money should be drawn from that portion of the consideration which might have been paid as an equivalent for the life interest of the husband in the lands not covered by the mortgage. Such portion of the consideration as was equivalent to the wife's reversionary interest, belonged to her. If, then, all that has been done is to secure to the wife, out of the consideration paid for these lands, a sum not exceeding her reversionary interest in them, most certainly there can be no ground of complaint. Though the husband and wife, and the grantees, had this object in view at the time of the sale, it furnishes no ground for the allegation of a *fraudulent intent*. It was precisely what the parties had a right to do; and it was proper in all respects that it should have been done.                    Judgment affirmed.